UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GWENDOLYN MITCHELL,<br>  315 Casey Lane<br>  Rockville, MD 20850 ,<br><br>                Plaintiff,<br><br>         v.<br><br>HON. JANET L. YELLEN,<br>  Chair, Board of Governors<br>     of the Federal Reserve System,<br>  20th and Constitution Ave., N.W.<br>  Washington, DC 20551,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. _____ |

## COMPLAINT
(Employment Discrimination)

### Introduction

1. Plaintiff Gwendolyn Mitchell brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e)-2 *et seq.*, and 42 U.S.C. § 1981a, to redress unlawful race discrimination and retaliation for her prior and ongoing protected EEO activity (*i.e.*, complaining about race discrimination in employment practice and prosecuting claims of such race discrimination), perpetrated against her by management of the Office of the Chief Data Officer at the Board of Governors of the Federal Reserve System, an independent agency of the government of the United States. Specifically, plaintiff contends that her superiors at the Office of the Chief Data Officer in Washington,

D.C.: (a) discriminated against her based on race (African American) and sex (female) and reprisal for opposing a racially hostile environment and acts of race discrimination against her when she was passed over for promotion and selection for the position of Operations Officer, Office of Chief Data Officer at the Board of Governors of the Federal Reserve System; (b) inflicted on her a racially hostile work environment and racially harassed her from November 2014 to July 2016 by embarrassing her in front of colleagues and subordinates, undermining her with her staff and in her work performance, treating her in a demeaning manner, and disrespecting her; and (c) retaliating against her during the period December 3, 2015 to June 30, 2016, when her supervisor transferred functions from projects on which she was overseeing to a white male about whom she had complained was racially harassing her, falsely assured her second-level the abusive behavior toward plaintiff had been corrected, limiting the training available to plaintiff's staff as compared to the staff's of those who had racially harassed her, contriving to rig the selection process for the Operations Officer position against plaintiff, limiting plaintiff's access to candidates for her staff, excluding plaintiff from meetings relevant to her work, despite promises to the contrary, failing to permit plaintiff to fill a subordinate position at a grade-level commensurate with staff positions being filled by other managers, permitting a racially abusive white colleague to exclude plaintiff from a consultant's presentation that was relevant to her work, and arbitrarily and without prior discussion, reversing requirement plaintiff had placed in a project charter and removing a critical role assignment.

**Jurisdiction**

2. This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16(c) and by the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Said subject matter jurisdictions also founded on 28 U.S.C. § 1331, as this action arises under the laws of the United States, thereby presenting a federal question.

**Venue**

3. Venue is proper in the United States District Court for the District of Columbia pursuant to the special venue provisions contained in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(3), as this is the judicial district in which the unlawful employment practices are alleged to have been perpetrated and in which the employment records related to the practices complained of are maintained and administered by defendant. Moreover, venue is also proper under 28 U.S.C. § 1391(b) as the events giving rise to plaintiff's claims substantially occurred in this judicial district and defendant conducts her official business here.

**Exhaustion of Administrative Remedies**

4. All of the necessary administrative prerequisites for filing the claims made herein have been met as plaintiff: timely filed a formal administrative complaint of employment discrimination based variously on race, sex, and retaliation for prior and ongoing protected civil rights activity on July 28, 2016, which was accepted for investigation by the Board of Governors of the Federal Reserve System by notice issued on

August 22, 2016 (designated as Agency EEO Case No. FRB-EEO-16-07-004) – plaintiff having previously sought EEO counseling on all her ongoing discrimination / retaliation claims on June 28, 2016, and received a notice of right to file a formal EEO complaint with respect to those claims on July 26, 2016, and a Report of Investigation ("ROI") on or about December 9, 2016 (with her counsel receiving such ROI on or about January 5, 2017). To date, a final agency decision ("FAD") on such claims has not been rendered by the Board of Governors of the Federal Reserve System, at least no such FAD has been provided to plaintiff. Therefore, 180 days have run since plaintiff filed her formal administrative EEO complaint and no FAD has been rendered on the claims made in that administrative EEO complaint, all of which were accepted for investigation by Board of Governors of the Federal Reserve System, and no FAD has yet been issued with regard to those EEO claims. Accordingly, plaintiff has exhausted her available administrative remedies under Title VII of the Civil Rights Act of 1964, as amended, and the regulations issued thereunder by U.S. Equal Employment Opportunity Commission, and the claims are thus ripe for litigation in the U.S. District Court.

## Parties

5.  Plaintiff Gwendolyn Mitchell (referred herein to as either "plaintiff" or "Ms. Mitchell) is an African American woman who is a citizen of the United States and of the State of Maryland. She is employed in Washington, D.C., at the Board of Governors of the Federal Reserve at its headquarters, as the Manager, Metadata and Taxonomy Operations in the Office of the Chief Data Officer of the Board of Governors of the Federal Reserve System.


6.

6.    Defendant Janet L. Yellen (referred to as "defendant" herein) is currently the Chair of the Board of Governors of the Federal Reserve System, and as such is the head of the Board of Governors of the Federal Reserve Board ("FRB"), an independent agency within the Executive Branch of the government of the United States which has had more than 600 employees in each of the last 20 months. Defendant Yellen is here sued in her official capacity as head of the FRB only.

### Statement of Facts

7.    As the Manager, Metadata and Taxonomy Operations in the FRB's Office of the Chief Data Officer, plaintiff is employed at the FR-29 grade level, which is roughly equivalent of a GS-15, but with an annual salary of $183,000. In this position, plaintiff supervises six subordinate employees, although one position is currently vacant and has been vacant for some time. She has maintained a record of excellent job performance.

8.    Plaintiff's immediate supervisor is Michael Kraemer, a white male the FRB's Chief Data Officer. Her second-level supervisor is Mr. Kraemer's immediate boss, Donald Hammond, the Chief Operating Officer of the FRB, also a white male.

9.    Plaintiff's claims stem from a two year period beginning in November 2014 and initially involve racial discrimination primarily by another white male who is also under the supervision of the Chief Data Officer (Michael Kraemer), Jeffrey Monica, the Data Governance Officer, and two of his subordinate supervisors, neither of whom is an African American: Irena Zadonsky, a white female, and Sridhar Dronamraju, an Asian (Indian) male. From November 2014 through July 21, 2016, Jeffrey Monica (who, being an "Officer,"

outranked plaintiff who was a "Manager") and his two subordinate supervisors engaged in a course of conduct toward plaintiff that amounted to racial harassment of and the creation of a race-based hostile work environment for plaintiff. This course of conduct included:

    a.    on several occasions in November and December 2014, Mr. Monica referred to plaintiff as a "new manager" despite her leadership experience in the private sector and her significant managerial experience at the FRB;

    b.    on several other occasions in November and December 2014, Mr. Monica acted menacingly toward plaintiff and spoke to her in a disrespectful tone during work-related discussions;

    c.    on January 27, 2015, Ms. Zadonsky verbally attacked a member of Jeffrey Monica's team who was supporting plaintiff at an open meeting, and in plaintiff's presence;

    d.    in late May 2015, Ms. Zadonsky told plaintiff's team (*i.e.*, plaintiff's subordinate staff) not to carry out an assignment from the Chief Data Officer;

    e.    on July 24, 2015, Mr. Dronamraju scheduled and attended EDI Lite kick-off meetings with stakeholders without the presence of plaintiff or the FRB's senior librarian, who was a supporter of plaintiff, despite having previously assured both plaintiff and the senior librarian they would be included;

    f.    on October 5, 2015, Mr. Dronamraju told plaintiff that she did not have permission to share certain work-related information;

    g.    on October 6, 2015, Mr. Monica verbally attacked plaintiff at a meeting in which others, including Michael Kraemer, were present, telling plaintiff: "You're no expert, so be quiet; no one cares what you think;"

    h.    on November 24, 2014, Mr. Monica yelled at plaintiff and, storming out of a meeting, told Mr. Kraemer "I told you about her (plaintiff). I'm tired of her;"

    i.    in early December 2015, Ms. Zadonsky directed a member of plaintiff's team to withhold information from her (plaintiff);

    j.    on December 3, 2015, Mr. Monica – with Mr. Kraemer's permission and complicity – removed a function from a project plaintiff was overseeing and gave it to himself as part of a project he was overseeing;

    k.    on January 13, 2016, Mr. Monica's team completely marginalized a member of plaintiff team from leading the effort to formulate a task order by drafting the task order themselves, requesting information from plaintiff's team member, and not informing plaintiff's team member of their intentions;

    l.    on February 8, 2016, Mr. Monica, and his two subordinate supervisors, Ms. Zadonsky and Mr. Dronamraju, continued to make decisions concerning a work stream related to the Enterprise Data Inventory project, and continued to exclude plaintiff from the decision-making process – thereby marginalizing her position;

    m.    on February 26, 2016, Mr. Monica informed plaintiff that his team would dictate how her team should perform nomenclature assignments for financial data despite his teams lack of relevant experience;

    n.    on March 8, 2016, Ms. Zadonsky developed a chart of responsibilities that relegated plaintiff to a subservient role in enterprise taxonomy development contrary to the recommendations by both the FRB's senior research librarian and plaintiff and despite the fact that this subject matter is within plaintiff's expertise and her area of responsibility;

o. on May 26, 2016, Mr. Monica and his subordinate supervisor, Ms. Zadonsky, failed to consult with plaintiff on the creation of a taxonomy job family for Office of the Chief Data Officer ("OCDO") although plaintiff manages the OCDO's Metadata and Taxonomy Operations Section;

p. during the week of June 5, 2016, Mr. Monica failed to contact plaintiff with regard to a voice mail he had received from an MTO stakeholder expressing concern regarding MDRM code assignments for a report scheduled to be issued at the end of June; rather than contacting plaintiff about this voice mail of concern, Mr. Monica forwarded the message to Michael Kraemer, who was on vacation at that time, and this action delayed plaintiff's response to the concerned stakeholder;

q. on June 27, 2016, Ms. Zadonsky, decided to exclude plaintiff from a consultant's presentation that was relevant to plaintiff's work;

r. on July 6, 2016, Mr. Monica held up a task order plaintiff's team had drafted without providing any reason for doing so; and

s. on July 21, 2016, Mr. Monica, the Assistant Director of OCDO, and his staff presented a slide that depicted the exclusion of plaintiff and her team from any involvement in metadata management and taxonomy work, despite the fact that these are precisely the areas of plaintiff and her team.

10. These actions were designed to demean, undermine and disrespect plaintiff in order to harass her and to create for her a hostile work environment. They were motivated by racial animus, and Michael Kraemer, the FRB's Director of the OCDO and plaintiff's immediate supervisor, and Donald Hammond, the FRB's Chief Operating Officer and

plaintiff's second-level supervisor, know of Jeffrey Monica's and Irena Zadonsky's and Sridhar Dronamraju's racially motivated misconduct toward plaintiff, but failed to correct their ongoing race-based harassment. Indeed, plaintiff had long complained to Mr. Kraemer about the mistreatment she was being accorded by Mr. Monica and his two subordinate supervisors, and on October 6, 2015, plaintiff specifically told Mr. Kraemer that Jeffrey Monica's motivation for mistreating her, and the motivation of his subordinates, was racially based.

11. In fact, once plaintiff told Michael Kraemer that the mistreatment she had been suffering at the hands of Jeffrey Monica and his two subordinate supervisors was racially motivated, he claimed to have lost confidence in her, and began to engage in a campaign of retaliation against her for having opposed Monica's and his subordinates' racist treatment of her. Indeed, it was in the wake of plaintiff expressing her belief that the mistreatment by Monica *et al.* was racially motivated, Mr. Kraemer commenced his own retaliatory campaign against her which included:

a. on December 3, 2015, his approval of and cooperation with the removal of a function from a project plaintiff was overseeing and the transferring of that function to a project being overseen by Jeffrey Monica;

b. on December 4, 2015, in plaintiff's presence, Mr. Kraemer informed his supervisor, Donald Hammond, FRB's Chief Operating Officer, that the abusive behavior toward plaintiff by Irena Zadonsky had been corrected although he knew that this was not the case;

  c. on March 28, 2016, Mr. Kraemer severely limited work-related training for plaintiff's team;

  d. on April 4, 2016, Mr. Kraemer announced that Jeffrey Monica would be on the interview panel for the filling of the vacant Operations Officer position knowing that plaintiff had applied for this announced vacancy, doing so in order to intimidate plaintiff so that she would withdraw her application;

  e. on April 16, 2016, Mr. Kraemer precluded a candidate from being interviewed by plaintiff for a vacancy on her team in favor of the same candidate being interviewed for a vacancy on Jeffrey Monica's team;

  f. on May 6, 2016, Mr. Kraemer excluded plaintiff from meetings relevant to her work;

  g. on June 27, 2016, Mr. Kraemer failed to follow through on steps he said he would take to back fill an open position on plaintiff's team at a higher level, but allowed other managers to hire at grade levels of their choosing (which seems to now have resulted in the person later selected for the open position on plaintiff's team being at risk of being denied the job due a potential hiring "freeze" being considered by FRB management to conform to the one recently imposed on other Executive departments and agencies by President Donald J. Trump).

  h. on June 27, 2016, Mr. Kraemer concurred with Irena Zadonsky's decision to exclude plaintiff from a consultant's presentation that was relevant to plaintiff's work; and

  i.  on June 30, 2016, Mr. Kraemer reversed requirements plaintiff had placed in a project charter and removed a critical role assignment.

  12. In an action of both race and sex discrimination, as well as in reprisal for her having complained about racial harassment against her and the creation of a race-based hostile work environment for her by Jeffrey Monica, the Deputy OCDO, and his two subordinate supervisors, the OCDO Michael Kraemer, and the COO Donald Hammond passed over plaintiff for the vacant position of Operating Officer in the Office of the Chief Data Officer, a selection which would have been a promotion for plaintiff, in favor of a less qualified white male applicant, Phil Daher. Indeed, the entire "Officer" corps in the Office of the Chief Data Officer is composed of males. Plaintiff learned of her non-selection for this vacancy on June 8, 2016.

<center>**Statement of Claims**</center>

**I. Race Discrimination –**

  13. The actions and omissions taken by FRB management in Washington, D.C., particularly by Jeffrey Monica, and his subordinate supervisors, Irena Zadonsky and Sridhar Dronamraju, and condoned by Michael Kraemer and Donald Hammond, with regard to plaintiff Gwendolyn Mitchell as specified in Paragraph Nos. 9 and 10 above, were taken with an intent to discriminate against Ms. Mitchell on the basis of her race, and to harass her on that basis and to create a hostile work environment for because of her race. Further, Michael Kraemer's and Donald Hammond's non-selection of plaintiff Gwendolyn Mitchell for the for the vacant position of Operating Officer in the Office of the Chief Data Officer, a

selection which would have been a promotion for plaintiff to an "Officer" level position at the FRB – a non-selection of which she learned on June 8, 2016 – as specified in Paragraph No. 12 above, was also taken because of plaintiff's race (as well as her sex and in retaliation for her protected civil rights / EEO activity). As such these actions and omissions constitute race-based violations of the Title VII of the Civil Rights Act, as amended, by defendant against plaintiff.

14.    As a consequence of such racial discrimination by defendant, Ms. Mitchell has suffered and continues to suffer adverse consequences, including loss of pay and benefits of employment at the FRB, career damage, personal and professional embarrassment and humiliation, emotional pain and suffering, and a loss of the enjoyment of life.

**II.    Sex Discrimination –**

15.    Michael Kraemer's and Donald Hammond's non-selection of plaintiff Gwendolyn Mitchell for the for the vacant position of Operating Officer in the Office of the Chief Data Officer, a selection which would have been a promotion for plaintiff to an "Officer" level position at the FRB – a non-selection of which she learned on June 8, 2016 – and which is specified in Paragraph No. 12 above, was taken because of plaintiff's sex (as well as her race and in retaliation for her protected civil rights / EEO activity). As such these actions and omissions constitute sex-based violations of the Title VII of the Civil Rights Act, as amended, by defendant against plaintiff.

16.    As a consequence of such sexual discrimination by defendant, Ms. Mitchell has suffered and continues to suffer adverse consequences, including loss of pay and benefits of

employment at the FRB, career damage, personal and professional embarrassment and humiliation, emotional pain and suffering, and a loss of the enjoyment of life.

### III. Retaliation for Prior and Continuing Protected Civil Rights / EEO Activity –

17. The actions and omissions taken by Michael Kraemer with regard to plaintiff Gwendolyn Mitchell as specified in Paragraph No. 11 above, were taken with an intent to retaliate against plaintiff for her having complained about the mistreatment she was suffering at the hands of Jeffrey Monica and his subordinate supervisors as being racially motivated. In addition, Michael Kraemer's and Donald Hammond's non-selection of plaintiff Gwendolyn Mitchell for the vacant position of Operating Officer in the Office of the Chief Data Officer, a selection which would have been a promotion for plaintiff to an "Officer" level position at the FRB – a non-selection of which she learned on June 8, 2016 – and which is specified in Paragraph No. 12 above, was taken in part in retaliation for Ms. Mitchell having complained the racial harassment and the creation of a race-based hostile work environment (as specified in Paragraph Nos. 9 and 10 above). As such, these actions and omissions constitute reprisal-based violations of the Title VII of the Civil Rights Act, as amended, by defendant against plaintiff.

18. As a consequence of such unlawful retaliatory conduct on defendant's part, plaintiff has suffered and continues to suffer adverse consequences, including loss of pay and benefits of employment at the FRB, career, damage, personal and professional embarrassment and humiliation, emotional pain and suffering, and a loss of the enjoyment of life.

## Prayer for Relief

**WHEREFORE**, plaintiff prays that this Court enter judgment in her favor and against defendant on the claims of unlawful race discrimination in employment practices brought herein, and on her claims of unlawful sex discrimination in employment practices brought herein, and on her claims of retaliation for her prior and continuing civil rights / EEO activity brought herein, pursuant to Title VII of the Civil Rights Act of 1964, as amended, and provide her with the following relief:

(a) award plaintiff compensatory damages against defendant in the amount of $300,000.00, plus interest thereon;

(b) place plaintiff in the permanent position of Operations Officer in the FRB's Office of the Chief Data Officer, and promote her (and increase her salary) accordingly, retroactive to June 1, 2016;

(c) provide plaintiff with full back pay and other benefits as required by the relief order in (b) above, with interest thereon;

(d) correct FRB records, including plaintiff's Official Personnel File ("OPF"), to reflect all of the above ordered relief and to eliminate all criticism of her work or her conduct for the period from November 2014 through the date of this order by anyone in the FRB's Office of the Chief Data Officer;

(e) enjoin defendant and all officials and managers of the FRB from retaliating against plaintiff further, and from discriminating against her on account of her race and/or her sex in the future;

(f) award plaintiff the costs of bringing and prosecuting this civil action and the administrative complaints that necessarily preceded it, including reasonable attorneys' fees, pursuant to 42 U.S.C. §2000e-5(k); and

(g) award plaintiff such other and further relief as the interests of justice may require.

## Jury Demand

Plaintiff hereby requests a trial by jury on all issues of fact, including the measure of damages.

Respectfully submitted,

David H. Shapiro
D.C. Bar No. 961326
SWICK & SHAPIRO, P.C.
1101 15th Street, N.W.
Suite 205
Washington, DC 20005
Tel (202) 842-0300
Fax (202) 842-1418
Email - dhshapiro@swickandshapiro.com

Attorney for Plaintiff