# Exhibit P

## AFFIDAVIT
## OF
## DONALD HAMMOND
## Chief Operating Officer

### Gwendolyn Mitchell v. FRB-EEO-16-07-004

1. Please identify your full name.

   Donald Victor Hammond

2. Please identify your current job title, grade & step, and employment location.

   Chief Operating Officer, level 1 Officer (Division Director) position

   1801 K Street, NW, Washington, DC

3. Identify the names, title and location of your first line and second line supervisor.

   Governor Jerome Powell, Administrative Governor

4. Identify/describe your organizational relationship to the Complainant in 2014, 2015 and 2016.

   The Complainant is a manager in our division who was hired in early 2014, from another part of the organization. She is primarily a third level report. For approximately 9 months she was a 2nd level report.

RACE AND SEX ALLEGATIONS

   5. Identify your race.

White

   6. Identify your sex.

Male

7. Are you aware of Complainant's race? If so, when and how did you become aware?

I believe complainant's race is African-American. I became aware of her race when we first met.

8. Are you aware of Complainant's sex? If so, when and how did you become aware?

Yes, I believe she is a female. I became aware of her sex when we first met.

## CLAIM 1: NON-SELECTION FOR THE POSITION OF OPERATIONS OFFICER IN THE OFFICE OF THE CHIEF DATA OFFICER (OCDO)

9. Complainant alleges that she was discriminated against based on race, sex and reprisal (opposition), when she was not selected for the position of OCDO. Please respond to this allegation.

a. Are you aware of when and whether Complainant applied for the position of Operations Officer in OCDO, at issue in this complaint?

Yes. I am. She applied in response to posting position.

b. What was the vacancy announcement number for the position?

I do not know.

c. In your opinion, was Complainant qualified for the position?

Yes.

d. Was the vacancy filled? If not please describe that status of the vacancy?

Yes.

e. If the vacancy was filled, identify the name, race, sex and prior EEO activity of the selectee.

Phillip Daher is the name of the selectee. I believe his race is White. He is a male. I am not aware of any prior EEO activity he may have had.

f. What is the name and position of the hiring official?

The selectee reports to the Chief Data Officer, Michael Kraemer. As the COO and division director, I put the hiring recommendation forward to Governor Powell who brings it before the full Board. All initial officer appointments are approved by the Board of Governors.

g. Was Complainant's race, sex or prior EEO activity a factor in the decision not to hire Complainant?

No.

h. Complainant alleges that she was treated disparately based on her race and sex, and states that 5 of the most recent hires/promotions in OCDO have been White males. Please respond.

OCDO is a new function, starting in May of 2013. There have been 11 management positions filled between May 2013 and June 2016. In reviewing these management position actions, 6 selectees were female and 5 of the 11 selections were minorities. I have separately provided a list of these actions to the investigator.

i. Complainant states that she was not selected for the position of Operations Officer because she raised a complaint stating that she was being subjected to racial harassment by a fellow manager, Jeff Monica. Please respond.

The Complainant was one of 6 qualified applicants for the position of Operations Officer in OCDO. Three of the candidates, including Complainant were considered finalists after a panel review. Their names were sent to Mike Kraemer and I. Based on the strength of the record and the interviews, the selectee was chosen for the position.

> The selectee had both extensive management experience and a strong background in applied data management. The Complainant's concerns with Mr. Monica were not a factor in the decision.
>
> j. Complainant states on or about October 6, 2016, after a meeting she and two other employees met with Mike Kraemer during which Complainant expressed that she was being discriminated against based on race. Please respond as to whether you are aware of this meeting, and your understanding of what occurred.
>
> I was not a party to the October 6, 2016 meeting with Mike Kraemer - though I am aware that OCDO employees met with Mike Kraemer. My understanding is that there was a leadership meeting in which bad personal behaviors were exhibited. After the leadership meeting, some of the management team met with Mike to express their opinions.

CLAIM 2: HOSTILE WORK ENVIRONMENT ALLEGATION

Complainant alleges that she was subjected to hostile work environment and racial harassment when, from November 2014 to July 21, 2016, Michael Kraemer, Director OCDO, and Donald Hammond, Chief Operating Officer, knew of and failed to correct the ongoing racial harassment by her co-workers Jeff Monica, Assistant Director, OCDO, Irena Zadonsky Manager, and Sridhar Dronamraju, Manager. Please respond to this allegation.

> 10. Were you aware of Complainant's hostile work environment allegations? If so, when and how did you first become aware?
>
> I was not aware that Complainant identified her concerns as a hostile work environment. On December 4, 2015, Complainant met with Mike Kraemer and I to discuss her concerns regarding the professionalism and working environment within OCDO. Complainant expressed that there were bad behaviors displayed and that there were disagreements about roles and responsibilities that weren't being resolved.
>
> I did not recall whether Complainant used the words hostile work environment. She may have used the word harassment. I do recall that she mentioned that it was a very unfriendly and confrontational

working environment.

11. Was there an investigation done into Complainant's hostile work environment allegations? If so, when and what was the result? Please provide any documents you may have on any investigation.

As a result of the meeting, the management team took the following actions -
(a) Immediately involved employee relations
(b) Consulted with the EEO officer
(c) Required the OCOO staff to take emotional intelligence and conflict management training. The management team did the EI training together.
(d) contracted with ADR Vantage consulting services in an effort to better understand and address the issues.

After the contractor completed its report we presented the findings to the OCDO group. Mike and I gave a discussion of the conclusions, our expectations and discussed unacceptable behavior. We then took next steps regarding addressing specific behaviors, and designated personnel received letters tailored to them based on the findings in the report.

We additionally are arranging a coach for the persons that had concerning behavior to provide targeted coaching.

We have also been open in communicating expectations about appropriate behavior in the office. Mike and I continue to discuss the situation and the work being done as part of our regular weekly meetings.

12. For each of the allegations listed below, please respond in full.

a) On July 21, 2016, Jeff Monica, Assistant Director, OCDO, and his staff presented a slide that depicted the exclusion of Ms. Mitchell's team from any involvement in metadata management and taxonomy work.

I am not familiar with this allegation.

b) On July 06, 2016, Mr. Monica held up a task order Complainant's team drafted without providing any reason for doing so.

I became aware of this on July 19, 2016. I was on personal travel from June 30 to July 19, 2016, during which time I did not have access to Board email. Upon my return, and after seeing this email I reached out to Mike Kraemer to find out more information on the situation. I followed up with Mike to understand how it was being resolved.

c) On June 27, 2016, Irena Zadonsky Manager, decided to exclude Complainant from a consultant's presentation that was relevant to Complainant's work.

I am not familiar with this issue.

d) During the week of June 5, 2016, Mr. Monica received a voice message from an MTO stakeholder expressing concerns regarding MDRM code assignments for a report scheduled to be issued at the end of the month. Rather than contacting Complainant, Mr. Monica forwarded the message to Michael Kraemer, who was out on vacation that week. Mr. Monica's actions delayed Ms. Mitchell's response to the stakeholder until the following week.

I am not familiar with this issue.

e) On May 26, 2016, Jeff Monica and Irena Zadonsky failed to consult with Complainant on the creation of a taxonomy job family for OCDO even though Complainant manages the OCDO Metadata and Taxonomy Operations Section.

I am not aware of specifics about May 26, 2016, though I am aware that there was a disagreement about roles and responsibilities. I learned about this issue from a project briefing and from Mike Kraemer.

f) On March 08, 2016, Irena Zadonsky developed a chart of responsibilities that relegated Complainant to a subservient role in enterprise taxonomy development contrary to recommendations by the Board's senior research librarian and Complainant despite the fact that the subject matter is in Complainant's expertise and area of responsibility.

I am not familiar with this matter.


g) On February 26, 2016, Jeff Monica informed Complainant that his team would dictate how Complainant's team should perform nomenclature assignments for financial data despite his team's lack of relevant experience.


I am not familiar with this issue.


h) On February 08, 2016, Jeff Monica, Ireana Zadonsky and Sridhar Dronamraju continued to make decisions concerning the work stream and excluded Complainant from the decision process, thereby marginalizing Complainant's position.


I am not aware of specifics on February 8, though I am aware that there was a continuing disagreement about roles and responsibilities. I learned about this issue generally from a project briefing and conversations with Mike Kraemer.


i) On January 13, 2016, Jeff Monica's team completely marginalized a member of Complainant's team from leading the effort to formulate a task order by drafting the task order themselves, requesting information from Complainant's team member, and not informing Complainant's team member of their intent.


I became aware of this on January 29, 2016, after being copied on an email.


j) On December 03, 2015, Jeff Monica and Mike Kraemer removed a function from a project Complainant oversaw and gave it to Jeff Monica as part of a project he oversaw.


I knew about the reassignment of roles from Mike Kraemer.


k) In early December 2015, Irena Zadonsky directed a member of Complainant's team to withhold information from her.

I am not familiar with this issue.

l) November 24, 2015, Jeff Monica yelled at Complainant and others, storming out of a meeting.

I am not familiar with this issue.

m) On October 6, 2015, Mr. Monica verbally attacked Complainant at a meeting with others present.

> I was not a party to the October 6, 2016 meeting. My understanding is that there was a leadership meeting in which bad personal behaviors were exhibited. After the leadership meeting, some of the management team met with Mike to express their opinions and concerns.

n) On October 5, 2015, Mr. Dronamraju told Complainant she did not have permission to share certain work-related information.

I heard third hand, not contemporaneously, from staff working on the project. I don't recall which staff member I heard this from. I didn't hear the information regarding the specific date that the event occurred.

o) On July 24, 2015, Mr. Dronamraju scheduled and attached EDI Lite kick-off meetings with stakeholders without the Board's senior research librarian and Complainant despite informing them previously that they would be included.

I am not familiar with this issue.

p) In late May 2015, Irena Zadonsky told Complainant's team not to carry out an assignment from the Chief Data Officer.

I am not familiar with this issue.

q) On January 27, 2015, Irena Zadonsky verbally attached a member of another team in an open meeting in Complainant's presence.

I am not familiar with this issue.

u) On several occasions in November and December 2014, Jeff Monica repeatedly looked at Complainant in a menacing manner and spoke in a disrespectful tone during work-related discussions.

I am not familiar with this specific issue.

r) On several occasions in November and December 2014, Jeff Monica referred to Complainant as new to managing and indicated he needed to help her in her new position despite Complainant's C-level leadership experience in the private sector and significant managerial experience in the Federal Reserve System

I'm not familiar with these conversations. Complainant was a relatively new manager at the Board at this time, since she was selected for her managerial position in January 2014. This was the first managerial position that Complainant had taken at the Board since she returned in 2002. Prior to 2002 Complainant had a break in service from the Federal Reserve System, and returned to the FRS in 2002 in a non-managerial position.

CLAIM 3: REPRISAL ALLEGATION

Complainant alleges that she was subjected to ongoing reprisal (opposition to racially hostile work environment), when, from December 3, 2015 to June 30, 2016, Michael Kraemer, Director, OCDO, retaliated against her based on her opposition to her co-worker's racial harassment.

    13. Please respond to each of the allegations:

a) On June 30, 2016, Mr. Kraemer reversed requirements Complainant placed in a project charter and removed a critical role assignment.

    I am not familiar with this specific event. Additionally, I was out of the office 6/30 – 7/19/2016, and unreachable during that time period.

b) On June 27, 2016, Mr. Kraemer concurred with Irena Zadnosky's decision to exclude Complainant from a consultant's presentation that was relevant to Complainant's work despite telling Complainant.

    I am not familiar with this issue.

    Additionally, I was out of the office 6/30 – 7/19/2016, and unreachable during that time period.

c) On June 27, 2016, Mr. Kraemer failed to follow through on steps he said he would take to back fill an open position on Complainant's team at a higher level, but allowed other managers to hire at grade[s] of their choosing.

The position was a backfill to a junior position. We had previously upgraded an earlier position vacancy in Complainant's section to a more senior position. This would have been an additional more senior position. I am not aware of any commitments that Mike would have made. I discuss every position posting with Mike – all positions in CDO – in order to make sure we effectively manage our budgeted resources and address our key priorities.

d) On May 6, 2016, Complainant was excluded from meetings relevant to her work.

I am not familiar with this issue.

e) On April 16, 2016, Mr. Kraemer precluded a candidate from being interviewed by Ms. Mitchell in favor of the same candidate being interviewed by Jeff Monica's team.

I am not familiar with this issue.

f) On April 4, 2016, Complainant applied for the Operations Officer position in OCDO. Mr. Kramer originally named Jeff Monica as a member of the Interview panel. Although Mr. Monica participated as a panelist in the interview of at least one other candidate; within an hour of Complainant's interview, the executive recruiter informed Complainant that Mr. Monica would not be her interview panel.

I was aware of this, and Mike Kraemer and I discussed this in light of the environment. We made a decision to remove Jeff Monica from the panel as a precaution in order to ensure that the selection process was as objective as possible. The Complainant did move forward as one of the 3 finalist.

g) On March 28, 2016, Work-related training for Complainant's team was limited to only two seats.

I am not familiar with this issue.

h) On December 4, 2015, Mr. Kraemer informed Mr. Hammond in Complainant's presence, that the abusive behavior of Irena Zadonsky had been corrected even though that was not the case.

During the meeting, I recall that Mike Kraemer said that Irena Zadonsky had been spoken to regarding her behavior. He did not state that her behavior had been corrected, or the results of any conversations with Ms. Zadonsky.

i) On December 3, 2015, Mr. Kraemer and Mr. Monica removed a function from a project Ms. Mitchell oversaw and gave it to Mr. Monica as part of a project he oversaw.

> I knew about the reassignment of roles from Mike Kraemer.

14. Complaint alleges that she was discriminated against based on her opposition to a racially hostile work environment.

a) Please identify when and whether you were aware that Complainant attributed the above incidents to reprisal? If so, please explain.

When I received notice of the informal complaint, in or about late July or early August 2016.

b) Were you aware that Complainant "opposed the racially hostile environment," and if so, how and when did you become aware?

I was aware that Complainant was concerned about an unprofessional working environment in 12/2015. In terms of the environment being "racially hostile," I don't remember it being characterized in this manner.

c) Did you consider Complainant's "opposition," in taking any employment actions, or other actions against Complainant?

No. In December 2015, we nominated Complainant for the selective "Thrive," training program. In fact, the nomination was submitted after the December 4, 2015, meeting with Complainant, Mike and myself. The Thrive program is a very selective career development program. It also provides visibility, recognition among the organization and shows that attendees are viewed as having high potential in the managerial space.

d) Identify any steps management took in response to Complainant's opposition.

> I don't understand this question. As noted earlier, we took specific actions in response to the issues that Complainant brought to our attention.

15. Do you have any additional statements or information to include in your response?

The only thing I would add is that, I have made myself open and available to all employees to discuss concerns. I take their concerns very seriously, and have acted on the concerns that I was aware of.

I HAVE READ THIS AFFIDAVIT CONSISTING OF 12 PAGE(S). I HEREBY ATTEST UNDER PENALTY OF PERJURY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF. I HAVE COMPLETEDTHIS AFFIDAVIT, AND SIGNED IT ON MY OWN ACCORD, OR WITH THE ASSITANCE OF MY DESIGNATED REPRESENTATIVE.

_[signature]_                      DATE: 9/28/16

DONALD V. HAMMOND
CHIEF OPERATING OFFICER

******************NOTHING BELOW THIS LINE******************

## Donald Hammond

| | |
|---|---|
| **From:** | Donald Hammond |
| **Sent:** | Monday, December 7, 2015 10:24 AM |
| **To:** | Sioux Thompson |
| **Cc:** | Michael Kraemer |
| **Subject:** | THRIVE Nomination -FRSONLY- |

BOARD PERSONNEL

Sioux,

Attached is the nomination for THRIVE from OCOO.   Let me know if you have any questions.

Don


I nominate Gwen Mitchell of OCOO to participate in the 2016 THRIVE program.  Gwen is the section manager of the Metadata and Taxonomy section within the Office of the Chief Data Officer (OCDO), and has been with the Board for over 20 years.  She has been a manager for almost two years, and has proven herself to be a thoughtful manager and a key member of the OCDO leadership team.

Gwen is a good manager who is building a cohesive data management team.  She has been a part of the process to guide automation efforts to innovate, modernize, and improve customer service in OCDO data management, one of the key service areas of the OCDO.  As a manager, Gwen challenges her team to develop creative approaches to their work and mentors and supports her employees' growth.   She engages with, and solicits ideas from, her team on how to improve operations and customer service levels.  In addition, Gwen has displayed a genuine interest in management development and has actively sought out opportunities to enhance her management skills.  As part of a new organization at the Board with a critical role, we believe she would benefit greatly from the opportunities and exposure that the THRIVE program offers and that as a result our organization would benefit as well.   Finally, we believe Gwen will be an active participant in the program and that her enthusiasm and professional curiosity will make a positive contribution.

We believe Gwen is a good example of a Board manager who would also benefit from the extensive FR System exposure that the THRIVE program provides, especially since many FR System staff use the Board data that her team helps to prepare for production use.  I strongly recommend Gwen for this program, and know she will contribute a great amount to its success.

Skip to main Home | Contact Us | A-Z Listing | Public Website | FedWeb | Stock Markets | Weather

# inside the board

Find People | Pay & Benefits | Career & Training | News | Your Workplace | Policies & Forms

## Board staff selected to attend Thrive Conference

Don Hammond, Chief Operating Officer
Published: March 21, 2016



Ten members of the Board's staff will participate in the 2016 System Leadership Initiative's Thrive Conference. Thrive is a unique leadership development experience designed to expose staff to the challenges of leading in the Federal Reserve System and further develop the capabilities needed to be successful in a dynamic environment. The conference is sponsored by the Federal Reserve Bank of Chicago and will be held on April 11-14.

Following are the Board staff who will be attending:



**Theresa Bugg**
Manager, Technology Development
DCCA



**Dale Furrow**
Manager, Emergency Planning & Safety
MGT



**Paul Futrell**
Manager, Financial Planning & Analysis
DFM



**Jenn Gallagher**
Special Asst. to Board for Congressional Liaison
BDM

000120



**Gwen Mitchell**
Manager, Information Management Services
OCDO



**Celeste Molleur**
Manager, Supervisory Oversight
BS&R



**Raven Molloy**
Chief, Real Estate Finance
R&S



**Becky Royer**
Manager, Budget and Cost Rev.
RBOPS



**Rob Vigfusson**
Chief, Trade & Quantitative Studies
IF



**Ivan Wun**
Assistant Director
IT

Contact Us | Accessibility Statement

Maintained by Web Communications & Development

000121