**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GWENDOLYN MITCHELL, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> HON. JANET L. YELLEN, ) <br>     Chairwoman, Board of Governors ) <br>     of the Federal Reserve System, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 17-00182 (APM) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF**
**UNDISPUTED MATERIAL FACTS**

Pursuant to Local Civil Rule 7(h), motions for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue. In its statement, however, Defendant failed to allege that there is no genuine issue regarding the reason it rejecting Ms. Mitchell for promotion. Although the local rules do not provide any consequence for such an oversight, it does provide that a similar oversight by the Plaintiff would allow the Court to "assume that facts identified by the moving party in its statement of material facts are admitted." LCvR 7 (h)(1). Given that a Defendant has an affirmative obligation to fully and clearly articulate its legitimate reason(s) for an adverse action, Plaintiff suggests that the Court should consider Defendant's failure to do so as an admission by Defendant that there is a genuine issue of fact regarding the motive behind its decision to reject Ms. Mitchell's application for promotion and, accordingly, deny Defendant's Motion for Summary Judgment on the non-promotion claim.

Despite failing to include any statements regarding the motive or reasons for its decision

or its managers treatment of the Plaintiff, the majority of the statements included in Defendant's Statement of Undisputed Material Facts are not material at all.

17.     Phil Daher, an experienced manager of a data section in another Board division, was ultimately selected for the Assistant Director position. Exhibit J.

**Response:**     **Disputed.** Mr. Daher was not a manager of a data section prior to his promotion to Assistant Director. Rather, he was an "Information Manager" and he supervised analysts (users) of data that was provided and managed by the Data Management Business Services Office. As the resume he submitted with his application makes clear, Mr. Daher supervised a team of analysts who used data to provide information to the Division of Consumer and Community Affairs. DX M (Daher Resume) ("Guide the work of a highly talented *analytical* team that uses a variety of *analytical technologies and* techniques to provide useful and actionable information that is easily accessed and understood across the Division's multi-functional business lines."). Thus, his role was "data analytics," i.e. to process the data into usable information for his division. PX 5 at 58, 145 (confirming that Daher performed data analytics in his prior role). Mr. Daher performed analytics/business intelligence functions for DCCA, where he used computer tools (SAS and Tableu) to help derive meaning from data. DX M.

In contrast, Ms. Mitchell has been employed in the field of data management for decades and currently as Manager of the Metadata and Taxonomy Operation. PX 27 at ¶¶ 3 - 9. The Metadata and Taxonomy Operation is a reporting unit to the Data Management Business Services Office ("DMBS"). OCDO is responsible for data management for the Board of Governors of the Federal Reserve, including "the strategy and oversight of data governance, data

management and data management technology in support of the Board's missions and strategic framework." DX L (Assistant Director Position Description) at 000256. OCDO and the Office of Data Management Business Services do not include data analytics.

In its second edition of *Data Management Body of Knowledge*, DAMA International[1] defines data management as a "high-level business process, [that] consists of the planning and execution of policies, practices, and projects that acquire, control, protect, deliver, and enhance the value of data and information assets." (*Id.* at 17). In short, data managers ensure that data is available, accurate and secure. (*Id.* at 18). Data analysts and others can then use that data for analytical purposes. DX M (Daher Resume noting that he fosters a culture in the Division of "using data as foundational pillars for strategic planning, program evaluation, and every day decision making").

23. The members of this panel included Alye Foster, a senior lawyer in the Board's Legal Division, Edgar Wang, Assistant Director in the Board's Division of Information Technology, and John Stevens, Deputy Associate Director in the Board's Division of Research and Statistics. Id.

**Response:** **Disputed.** Jeff Monica was initially on the interview panel despite complaints of harassment by Ms. Mitchell, but was removed at the suggestion of ADR Vantage. PX 2 (Kraemer Depo) at 93.

24. This initial interview panel advanced three of the seven candidates interviewed (including plaintiff) to the final interview round with Chief Data Officer Michael Kraemer and

---

[1]The Data Management Association (DAMA) is a well-regarded non-profit and vendor-independent association of business and technical professionals that is dedicated to the advancement of data resource management and information resource management. *See* https://dama.org/content/about-us (Last visited 5/7/2018). DAMA publishes the Data Management Book of Knowledge, as a best practice resource for data management professionals. Plaintiff asks that the Court take judicial notice of its authoritative value.

Chief Operating Officer Donald Hammond. Id.

**Response:** **Disputed.** Although the panel elected to advance Ms. Mitchell along with two white male candidates, it does not appear that her candidacy was actually considered by the second panel. Mr. Kraemer made notes about the second round interviews he and Mr. Hammond conducted of the two white males (Phil Daher and Matthew Hayduk), but he did not make any notes about his interview with Gwen Mitchell, a black female who had complained about race and sex discrimination to him. DX K.

26. At the time of his selection, Phil Daher had been a Board manager for nine years and plaintiff had been a Board manager for just a little over two years. Exhibit B, Mitchell Tr. 181: 3-8; Exhibit M, Daher Resume at 1.

**Response:** **Incomplete.** Ms. Mitchell had been a manager in the OCDO since the Office's inception, and had been responsible for supervising six employees with a focus on data management including enterprise metadata, nomenclature, and enterprise taxonomy. DX C (Mitchell Resume). Phil Daher had no previous experience with the OCDO, data management or taxonomy. PX 4 (Mitchell Affidavit) at 3, 5; PX 1, 180.

27. In early 2016, the OCDO engaged an outside consultant, ADR Vantage, to conduct a climate assessment of the office based on workplace tensions and other issues, including complaints raised by plaintiff in late 2015 about her interactions with Jeff Monica and his two subordinate managers. Exhibit P, Hammond Affidavit at 4-5.

**Response:** **Disputed.** Mr. Kraemer testified that the climate assessment was *not* conducted because of Ms. Mitchell's complaints of race discrimination. PX 2 at 75.

28. A summary of the results of this assessment were shared with the OCDO staff in June 2016 by Chief Operating Officer Hammond and Chief Data Officer Kraemer, including specific inappropriate behaviors that had been identified during the assessment. Id.; Exhibit Q, ADR Vantage Follow-Up Email.

**Response:** **Disputed.** The summary shared with OCDO staff did not include the findings of

discriminatory motive or the complaints of race-based harassment by Monica, Dronamraju, and Zadonsky, even though their letters mentioned such findings.  *See* PX 31 at 2; PX 32 at 2; PX 33 at 2, did not actually carry any discipline.  *See* PX 12 at 141 (letters of counseling were not disciplinary actions, and, remarkably, each manager was told that the findings would have no impact on his or her career at the Board).

29.     Following the assessment, Chief Data Officer Michael Kraemer issued written counseling letters to Mr. Monica, Ms. Zadonsky, and Mr. Dronamraju that made clear that inappropriate behavior would not be tolerated and required them to participate in targeted professional coaching.  Exhibit P, Hammond Affidavit at 5; Exhibit E, Hammond Tr. 115:8-21.

**Response:**     **Disputed.**  The letters of counseling were not disciplinary actions, and they were told that the findings would have no poor impact on their careers at the board. PX 12 at 141.

Respectfully submitted,

            /S/
David H. Shapiro
D.C. Bar No. 961236
SWICK & SHAPIRO, P.C.
1101 15th Street, N.W., Suite 205
Washington, D.C. 20005
Tel. 202-842-0300 // Fax 202-842-1418
dhshapiro@swickandshapiro.com

Attorneys for Plaintiff